IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| GEORGE CUTTINO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 0:19-cv-1542-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the court on Magistrate Judge Paige J. Gossett's Report and Recommendation ("R&R"), ECF No. 23, that the court affirm Commissioner of Social Security Andrew Saul's (the "Commissioner") decision denying George Cuttino Jr.'s ("Cuttino") application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Cuttino filed objections to the R&R, ECF No. 24. For the reasons discussed below, the court adopts the R&R and affirms the decision of the Commissioner.

## I.  BACKGROUND

### A. Procedural History

Cuttino filed an application for DIB and SSI on January 24, 2013, alleging a disability onset date of November 27, 2012. Cuttino's coverage under the Act expired on December 31, 2014 ("date of last insured"), meaning that Cuttino must establish that he

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

1

was "disabled" within the meaning of the Act on or before that date to be entitled to DIB and SSI. The Social Security Administration ("the Agency") denied Cuttino's application both initially and on reconsideration. Cuttino requested a hearing before an administrative law judge ("ALJ"), and ALJ Edward T. Morriss presided over a hearing held on April 23, 2015. In a decision issued on July 31, 2015 (the "2015 ALJ Decision"), the ALJ determined that Cuttino was not disabled within the meaning of the Act. Specifically, the ALJ determined that Cuttino had the residual function capacity ("RFC") to perform "light work as defined in defined in 20 C.F.R. § 404.1567(b)." Tr. 25. In so finding, the ALJ accorded "little weight" to the opinions of Cuttino's treating physician, Dr. David Baggett, and consultative psychologist, Dr. L. Randolph Waid. Tr. 27. Cuttino requested Appeals Council review of the 2015 ALJ Decision, and on January 19, 2017, the Appeals Council denied further review, making the 2015 ALJ Decision the final decision of the Commissioner.

      Cuttino filed his first action seeking review of the 2015 ALJ Decision with this court on March 8, 2017. See Cuttino v. Berryhill, 0:17-cv-0645-DCN, ECF No. 1. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), that action was assigned to Magistrate Judge Gossett, who issued an R&R recommending that this court reverse the decision of the Commissioner and remand the matter because the ALJ failed to articulate specific reasons for his rejection of Dr. Baggett and Dr. Waid's medical opinions (the "2018 R&R"). Tr. 871–86. The 2018 R&R specifically noted, "the court is unable to determine whether the ALJ's decision is supported by the substantial evidence" because the ALJ offered only "cursory and conclusory statements" in according "little weight" to the opinions of Dr. Baggett and Dr. Waid. Tr. 881. Therefore, the 2018 R&R

recommended remand with instructions that the ALJ reconsider the medical opinion evidence and articulate his evaluation of those opinions with specific reference to Cuttino's medical record.

On March 29, 2018, this court adopted the R&R as an order of the court (the "2018 Court Order"), reversed the decision of the Commissioner, and remanded the matter for further administrative action. 0:17-cv-0645-DCN, ECF No. 25. On July 2, 2018, in accordance with the 2018 Court Order, the Appeals Council vacated the decision of the Commissioner and remanded the matter back to the same ALJ, Edward T. Morriss. The ALJ presided over a second hearing on January 9, 2019. In a decision issued on March 25, 2019, the ALJ again determined that Cuttino was not disabled (the "2019 ALJ Decision"), again according "little weight" to the opinions of Dr. Baggett and Dr. Waid.

Cuttino filed his second complaint seeking review of the 2019 ALJ Decision in this court on May 28, 2019. ECF No. 1. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the matter was assigned to Magistrate Judge Gossett, who issued an R&R on June 26, 2020, recommending that this court affirm the ALJ's decision. ECF No. 23. On July 10, 2020, Cuttino filed objections to the R&R, ECF No. 24, and on July 15, 2020, the Commissioner responded, ECF No. 25. As such, this matter is now ripe for the court's review.

**B. Medical History**

The parties are familiar with Cuttino's medical history, the facts of which are ably recited by the R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Cuttino's objections to the R&R. In 2009, Cuttino was working for a waste disposal company when he injured his

back and shoulders lifting an appliance. Cuttino was forty-two years old at the time of his alleged disability onset date. On his application for DIB and SSI, Cuttino stated that he suffered from "various back and shoulder problems" that limited his ability to work. Tr. 323. He has also been diagnosed with mental illnesses and limitations, including anxiety disorder, major depressive disorder, and cognitive deficiencies. Cuttino graduated from high school in 1989 and has over a decade of past relevant work as a sanitation truck driver.

### C. The 2019 ALJ Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R.

§ 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps."  Id. (citing Hunter, 993 F.2d at 35).

  To determine whether Cuttino was disabled at any point between his alleged onset date of November 27, 2012 and his date of last insured, December 31, 2014, the ALJ employed the statutorily required five-step evaluation process.  At step one, the ALJ found that Cuttino did not engage in substantial gainful employment during the period between his alleged onset date and date of last insured.  Tr. 793.  At step two, the ALJ determined that Cuttino suffered from the following severe impairments: "degenerative disc disease of the cervical spine status-post surgery, left rotator cuff tendonitis status-post surgery, and mood disorder."  Id.  At step three, the ALJ found that Cuttino's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments.  Tr. 793–96.  Before reaching the fourth step, the ALJ determined that Cuttino retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR [§] 404.1567(b) . . . ."  Tr. 796.  In so finding, the ALJ accorded "little weight" to the opinions of Dr. Baggett and Dr. Waid.  Tr. 801–04.  The ALJ found, at the fourth step, that Cuttino was unable to perform his past relevant work as a sanitation truck driver.  Tr. 805.  However, at step five, the ALJ determined that, based on his RFC, Cuttino could perform jobs that exist in significant numbers in the national economy.  Tr. 805–06.  Therefore, the ALJ concluded that

Cuttino was not disabled under the meaning of the Act during the period at issue.  Tr. 807.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"  Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor

is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).  Although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard.  Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).  While the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action."  Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).

### III.   DISCUSSION

Cuttino lodges two objections to the R&R.  First, Cuttino argues that the Magistrate Judge erred in finding that "the ALJ properly analyzed the medical opinion evidence."  ECF No. 24 at 2.  And second, Cuttino argues that the Magistrate Judge erred in finding that the ALJ properly evaluated Cuttino's subjective complaints about his symptoms and limitations.  Id. at 7.  The court addresses each in turn, finding that neither warrants reversal.

### A.  Medical Opinion Evidence

In the 2015 ALJ Decision, the ALJ accorded "little weight" to the medical opinions of Dr. Baggett and Dr. Waid.  Tr. 27.  In the 2018 Court Order, the court found that the ALJ failed to articulate permissible reasons for his evaluation, such that the court could not determine whether it was supported by substantial evidence.  On remand, the

ALJ again afforded the opinions of Dr. Baggett and Dr. Waid "little weight" in the 2019 ALJ Decision. Tr. 801–804. Unlike the 2015 ALJ Decision, the 2019 ALJ Decision includes an eleven-paragraph explanation of the ALJ's evaluation of the opinions of Dr. Baggett and Dr. Waid. Reviewing the 2019 ALJ Decision, the R&R concluded, "[W]hile reasonable minds could disagree based on this record, Cuttino has failed to demonstrate that the ALJ's evaluation of [the medical] opinions is unsupported by the substantial evidence or based on an incorrect application of the law." ECF No. 23 at 14. Now, Cuttino objects to the R&R on this ground, arguing that "the ALJ made the same error on remand in failing to properly evaluate the medical opinion evidence." ECF No. 24 at 2. In other words, Cuttino argues that although the ALJ includes a "detailed rationale" for his evaluation of the medical opinion evidence, his decision to accord "little weight" to the opinions of Dr. Baggett and Dr. Waid is nonetheless improper. ECF No. 24 at 3. As such, Cuttino again asks the court to "remand[ ] with instructions for the ALJ to properly evaluate the opinion evidence." ECF No. 24 at 7. The court discusses the law that governs an ALJ's evaluation of medical opinion evidence and then discusses the opinion of each doctor in turn, agreeing with the R&R with respect to each.

### 1. Evaluation of Medical Opinion Evidence

Regardless of the source, an ALJ must evaluate every medical opinion a claimant provides. 20 C.F.R. § 404.1527(c). Where a claimant provides an opinion from a "treating source", the opinion is generally entitled to significant weight in the determination of disability under the treating physician rule. 20 C.F.R. § 404.1527(c)(2); see Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight"

8

where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule's good sense:

> treating physicians are given more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[].

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)) (internal quotation marks omitted).

Where an opinion is not entitled to deference under the treating physician rule, the ALJ still must apply several factors to determine the weight the opinion should be afforded. 20 C.F.R. § 404.1527(c)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is consistent with medical signs and laboratory findings, (4) the consistency of the opinions with the record and other opinions, (5) whether the physician is a specialist, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6). The ALJ must give "good reasons" in the decision for his or her assignment of weight to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), meaning that the decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

9

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P.

The Fourth Circuit does not mandate an express discussion of each factor, and this court has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 624 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

### 2. Dr. Baggett

Dr. Baggett treated Cuttino from at least November 2013 to December 2015.[2] Dr. Baggett provided three opinions. As an initial matter, the court addresses two of those opinions, the November 14, 2013 opinion and the December 11, 2015 opinion. Dr. Baggett's November 14, 2013 opinion consists of a one-page, multiple choice-styled form. Under a prompt that stated, "Patient is:", Dr. Baggett checked the box corresponding with a response that stated "not able to work in his or her occupation." Tr. 657. In response to a second "Patient is:" prompt, Dr. Bagget marked the box

---

[2] From the record, it is unclear when exactly Dr. Baggett began treating Cuttino. The court need not determine the exact date on which the treatment relationship began, however, as Cuttino does not object to the R&R's characterization of the treatment relationship and it is undisputed that Dr. Baggett is a "treating physician" for the purposes of the Act.

corresponding with a response that stated "permanently and totally disabled." Id. Dr. Baggett's December 11, 2015 opinion is a nearly identical form on which Dr. Baggett checked the same boxes in response to the same questions. Tr. 1119. As an initial matter, the court notes that the ALJ's decision to afford little weight to these opinions is proper. The regulations make clear that the ultimate determination of disability is reserved to the Commissioner and that statements by medical sources that a claimant is "disabled" or "unable to work" do not warrant "special significance." 20 C.F.R. § 416.927(d). Dr. Baggett's November 13, 2014 and December 11, 2015 opinions are nothing more than ultimate determinations of disability. As such, the ALJ did not err in affording them "little weight."

Dr. Baggett's third opinion, dated May 27, 2015, provides more substantive opinion evidence concerning Cuttino's ability to work in light of his impairments. Dr. Baggett's May 27, 2015 opinion is an eight-page questionnaire in which Dr. Baggett checked boxes corresponding to various limitations on Cuttino's ability to work. Tr. 711–18. For example, one prompt asks Dr. Baggett to assess how long Cuttino could spend standing and/or walking in a normal workday, in response to which Dr. Baggett marked the box indicating "less than 2 hours in an 8-hour workday." Tr. 714. In according "little weight" to this opinion, the ALJ stated, "The extent of the limitations reported by Dr. Baggett are not supported by findings in his own treatment notes, which as reflected above in this decision have been generally unremarkable." Tr. 801–02. The ALJ specifically noted the lack of supporting evidence in the longitudinal record:

> In particular, while Dr. Baggett's May 2015 opinion reflects that [Cuttino] should use a cane and that he could sit, stand, and/or walk less than two hours each in an 8-hour day, Dr. Baggett's treatment notes do not document observations that [Cuttino] had an abnormal gait or that [Cuttino] exhibited

11

> difficulty sitting or standing. Dr. Baggett's treatment notes do not document abnormal findings relating to strength which would support the use o[f] a cane or the sitting, standing, walking, pushing, or pulling limitations in his opinion . . . . Finally, in giving little weight to Dr. Baggett's opinions regarding [Cuttino]'s physical limitations, I note that for the reasons discussed above in this decision, the overall evidence is consistent with a conclusion that [Cuttino] can perform the physical demands of his assigned residual function capacity.

Tr. 802.

The ALJ also discussed evidence that supported his assessment of Cuttino's RFC, that is, evidence contrary to Dr. Baggett's May 27, 2015 opinion. For example, the ALJ stated that

> Dr. Baggett's treatment records [ ] document rather benign musculoskeletal findings. Notably, they do not document findings relating to [Cuttino]'s spine or left shoulder such as swelling or abnormal strength, range of motion, or sensory findings. Dr. Baggett even noted repeatedly that [Cuttino] was doing quite well. Dr. Baggett's treatment records further reveal that a May 2013 x-ray scan of [Cuttino]'s left shoulder was negative. A May 2013 x-ray of [Cuttino]'s cervical spine showed his history of prior cervical surgery but was otherwise unremarkable except for progressive degenerative spur formation at C4-5 and C6-7 associated with mild disc space narrowing.

Tr. 798. The ALJ also noted that consultative examinations produced further evidence contrary to Dr. Baggett's opinion:

> The clinical findings of the consultative examiners are consistent with a conclusion that [Cuttino] can perform the exertional demands of light work. In particular, in December 2013, consultative examiner Temisan Etikerentse, M.D., reported [Cuttino] to have no motor or sensory deficits. He documented no strength deficits[,] and he specifically noted [Cuttino] to have 5/5 grip strength in both hands. In May 2014, consultative examiner Darlene Bernard, M.D., reported [Cuttino] to have tenderness over the trapezius muscles and cervical spine but documented [Cuttino] to have 5/5 motor strength in his bilateral upper and lower extremities. Dr. Bernard did not report [Cuttino] to have any sensory deficits.

As such, the ALJ properly articulated the reasons that underlie his evaluation, explaining that Dr. Baggett's opinion is both "not supported by clinical evidence" and

"inconsistent with other substantial evidence." Craig, 76 F.3d at 590. Therefore, the ALJ's decision to accord "little weight" to Dr. Baggett's May 27, 2015 opinion is based on a proper application of the law. See id. ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). For the same reason, i.e. because contrary evidence exists in the record, the ALJ's evaluation of Dr. Baggett's opinion is supported by substantial evidence.

In his objection, Cuttino points the court to several portions of the record that might support the limitations Dr. Baggett espouses in his opinion. For example, Cuttino notes that Dr. Baggett's opinion is supported by "the opinions from Dr. Samuel Rosen following a psychiatric evaluation and Dr. Waid following neuropsychological evaluations, statements from two vocational witnesses, Dr. Benson Hecker and Mr. David Price, along with 2012 treatment notes from Dr. Keffer and a December 2013 note from Dr. Etikerentse documenting antalgic gait and ambulation with a cane." ECF No. 24 at 2–3 (internal quotation marks omitted). To be sure, there exists evidence in the record that would support Dr. Baggett's May 27, 2015 opinion. However, the practice of reweighing the evidence that was before the ALJ is beyond the purview of this court. As the R&R correctly noted, judicial review of an ALJ's determination is limited to two inquiries: whether the ALJ applied the correct law and whether the ALJ's determination is supported by substantial evidence. See Hays, 907 F.2d at 1456. The court agrees with the R&R's contention that "reasonable minds could disagree" with the ALJ's evaluation of Dr. Baggett's opinion. But, as the R&R was, the court is constrained by the limited nature of its role. The record contains evidence that tends to contradict Dr. Baggett's

13

opinion and the ALJ properly relied upon such evidence. As such, the ALJ's evaluation of Dr. Baggett's opinion is both based on a proper application of the law and supported by substantial evidence. See Craft, 164 F.3d at 624 ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies [ ] or has not given good reason for the weight afforded a particular opinion."). Finding that the ALJ's evaluation passes muster under the both relevant inquiries, the court will not disturb it.

### 3. Dr. Waid

Unlike Dr. Baggett, Dr. Waid qualifies as a consultative medical source, not a treating source, such that his opinions do not implicate the treating physician rule. Nevertheless, regulations to the Act impose a duty upon an ALJ to consider a non-treating medical source's opinion pursuant to the factors articulated in 20 C.F.R. § 404.1527(c) and recapitulated above. Dr. Waid, a psychologist, provided several opinions as to Cuttino's mental limitations, which arose from Dr. Waid's review of Cuttino's medical records as well as consultations with Cuttino on January 30, 2013; February 15, 2013; March 7, 2013; and April 28, 2015. Dr. Waid provided dozens of pages of findings with respect to Cuttino's mental limitations on his ability to work. Relevant here, Dr. Waid opined that Cuttino's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" was "markedly limited." Tr. 682. Similarly, Dr. Waid noted that clinical tests and a review of Cuttino's medical history revealed Cuttino "to have significant compromise in his cognitive functioning particularly with regard to attention/concentration and executive functioning," which Dr. Waid concluded renders Cuttino "deficient" in terms of

"learning/memory capacities" and "pose[s] a significant additional obstacle to Mr. Cuttino's ability to return to any type of gainful employment . . . ."  Tr. 656.

The ALJ afforded Dr. Waid's opinions "little weight", concluding that "[t]he degree of mental limitations Dr. Waid reported and indicated [Cuttino] to have are not consistent with the overall evidence of record or fully supported by his own findings." Tr. 804.  In so finding, the ALJ noted both the absence of supporting evidence and the existence of contrary evidence in the record:

> For example, while [Cuttino] told Dr. Waid that he had been diagnosed with a learning disability and attention deficit hyperactivity disorder, the evidence does not contain education records or treatment records confirming [Cuttino]'s report.  The record also does not contain education records corroborating [Cuttino]'s report to Dr. Waid that he received specialized education while in school. [Cuttino]'s school transcript, however, reflects mostly passing grades from elementary school through high school.  The grades on [Cuttino]'s school transcript are inconsistent with [Cuttino]'s rather poor performance on academic achievement testing administered by Dr. Waid and Mr. Price.  Likewise, while [Cuttino] earned a full-scale IQ score of 75 in 2013, his April 2011 IQ score of 84 and his April 2015 full-scale IQ score of 82 are more consistent with [his] history of a 12th grade education and performing semiskilled work.

Id. (internal citations to the record omitted).  The ALJ also discredited Dr. Waid's opinion, in part, based on the lack of treatment relationship between Dr. Waid and Cuttino.

The court agrees with the R&R's conclusion that "Cuttino has failed to demonstrate that the ALJ's evaluation of [this] opinion[ ] is unsupported by substantial evidence or based on an incorrect application of the law."  ECF No 23 at 14.  The ALJ's evaluation reflects direct consideration of the factors promulgated under § 404.1527(c). For example, the ALJ considered the length and nature of the treatment relationship, the extent to which the opinion is consistent with the other medical opinion evidence, and the

15

extent to which the opinion is consistent with objective data and findings. As such, the ALJ applied the correct law in reaching his determination. Moreover, there is substantial evidence in the record, articulated above, that contradicts the mental limitations reflected in Dr. Waid's opinions. Again, Cutino points the court to evidence in the record that supports Dr. Waid's opinions.[3] And again, the court must note that the limited nature of its review precludes the court from reweighing evidence to arrive at a conclusion different from the one reached by the ALJ. Finding that substantial evidence supports the ALJ's evaluation, the court's inquiry ends. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]."). Because the court finds that the ALJ's evaluation of the medical opinion evidence is based upon a correct application of the law and is supported by substantial evidence, the court overrules Cuttino's first objection.[4]

---

[3] Cuttino also argues that Dr. Baggett's diagnosis of "recurrent major depression" supports Dr. Waid's opinion. ECF No. 24 at 6. With respect to Dr. Baggett's opinions as to Cuttino's mental limitations, the ALJ accorded little weight to the opinions for the reasons discussed above, as well as the fact that Dr. Baggett is a physician, and not a specialist in mental illness. See Tr. 802. The court notes that this is a proper factor to consider under the regulations. See 20 C.F.R. §§ 404.1527(c)(5) (permitting an ALJ to consider whether the medical source is a specialist).

[4] Cuttino also takes issue with the R&R's citation to an unpublished district court opinion, Williams-Wright v. Colvin, 2014 WL 117228 (W.D.N.C. Jan. 10, 2014). The R&R provides citation to Williams-Wright to support the following proposition: "[T]o the extent that [Dr. Baggett and Dr. Waid] simply opined that Cuttino was disabled, the issue of whether a claimant is disabled is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance." ECF No. 23 at 15. Mistakenly, Cuttino equates this conclusion to a finding that all of Dr. Waid's opinions are conclusive and not entitled to deference for that reason. Not so. The R&R held that Williams-Wright applies only "to the extent that" Dr. Waid's opinions are ultimate opinions on the issue of disability. Id. To the extent the opinions constituted more substantive medical findings, the R&R found that the ALJ properly accorded "little

### B. Cuttino's Subjective Complaints

Cuttino argues that "the ALJ's rationale for discounting Mr. Cuttino's allegations [of subjective complaints] embodies error and is not linked to substantial evidence[.]" ECF No. 24 at 7.  Within this general objection, Cuttino asserts two specific objections that warrant de novo review.  First, Cuttino argues that the ALJ's finding that "no [healthcare] provider has recommended more than conservative management for [Cuttino's] physical impairments" since his spine surgeries, Tr. 797, "is simply incorrect."  ECF No. 24 at 8.  To support his contention, Cuttino notes that his physician performed a steroid injection in 2017, Tr. 1100, recommended a back brace, and prescribed Norco, a "strong prescription pain medication that contains an opioid," ECF No. 24 at 8 (citing Tr. 1098).  Contrary to Cuttino's argument and in accordance with the ALJ's evaluation, however, the Fourth Circuit considers such treatments "conservative." Sharp v. Colvin, 660 F. App'x 251, 259 (4th Cir. 2016)  (finding a treatment plan that included "injections, pain medication, and physical therapy" to be "conservative"). Because the law reveals that the ALJ's finding is not "simply incorrect", the court overrules the objection.

Second, Cuttino argues that the ALJ erred in relying on Cuttino's failure to seek free or low-cost health treatment, noting that a claimant's failure to pursue treatment based on their inability to afford it is "a poor reason to reject mental complaints."  ECF No. 24 at 9.  To be sure, Cuttino's statement of the law on this point is correct.  It is well settled that a claimant for Social Security benefits should not be "penalized for failing to

---

weight" to those opinions based on the existence of substantial contrary evidence in the record.  The court agrees.

seek treatment [he] cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986).  As the Fourth Circuit stated in Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984), "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."  The regulations reflect this law, commanding that where a claimant has not pursued medical treatment because of a lack of financial resources, an ALJ must not draw "any inferences about an individual's symptoms and their functional effects" from the failure to pursue medical treatment "without first considering any explanations that the individual may provide . . . ."  SSR 96–7p.

     Cuttino's application of the law, on the other hand, misses the mark because the ALJ did not penalize Cuttino for his inability to afford treatment and specifically considered Cuttino's inability to pay for medical services.  Tr. 797 ("At the outset I note that [Cuttino] testified that he did not have health insurance prior to receiving Medicaid beginning in approximately December 2018.  Accordingly, I acknowledge that [Cuttino's] uninsured status may have had some impact on the frequency of treatment he has received during the time period at issue.").  Because Cuttino testified that he could not afford to seek treatment, the ALJ considered whether Cuttino sought no-cost or low-cost treatment, not whether Cuttino sought treatment that he could not afford.  Id. ("[T]here is no indication that [Cuttino] has sought treatment from any no-cost to low-cost mental health professionals who are commonly known to be available in his community.").  Therefore, the court finds that the ALJ complied with the law by "first considering [Cuttino's] explanation" for failing to seek treatment, SSR 96–7p, and by not

penalizing Cuttino "for failing to seek treatment [he could] not afford." Lovejoy, 790 F.2d at 1117. As such, the court rejects Cuttino's second objection.

### IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **AFFIRMS** the final decision of the Commissioner.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 11, 2020**
**Charleston, South Carolina**